In the Matter of LEONARD MARX, Petitioner, against GEORGE M. BRAGALINI et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, October 3, 1958.

394

*Harry Janin* and *Joseph H. Crown* for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* and *Paxton Blair* of counsel), for respondents.

*William C. Warren, amicus curiae.*

BERGAN, J. P. This proceeding against the State Tax Commission involves the petitioner's individual State income tax for 1950. Petitioner is an officer and owner of the controlling stock of a New York corporation. The corporation held certain real estate on which there was a Federal Housing Administration mortgage; by reason of appreciation in the value of the real estate the corporation was able to obtain a larger mortgage and pay off the existing one.

When this transaction was completed the "net proceeds of refinancing" in cash in the possession of the corporation were $824,810.60. Besides this sum created by the refinancing based on appreciation of assets, there were accumulated earnings and profits of $77,911.31. The directors on July 28, 1950 made a distribution to stockholders of $735,000 at the rate of $700 a share.

Petitioner received $389,588.89 on this distribution. He reported a part of this in his State income tax return under "income" from "dividends". The amount allocated to this was $41,296.42. This estimate is based roughly on the ratio that the accumulated earnings and profits of the corporation reflected in the distribution bore to the total distribution, a little over 10%.

Petitioner reported in his tax return that he had bought the stock for $346,117.85. Deducting from the distribution he received the sum of $41,296.42, which he treated as a "dividend", he treated the balance of the distribution, $348,292.47, as a "sale" of the stock for the purpose of computing a capital

gain based on the difference between the purchase price, $346,117.85, and the " sale ", $348,292.47.

This difference, $2,174.62, was reported as a " capital gain ". The rest of the distribution, i.e., $346,117.85, which equals the amount he had paid for the stock, is treated by petitioner as a " return of capital ", not subject to any income tax.

On audit, the Income Tax Bureau ruled that the entire distribution " is normal income ". On final determination of petitioner's application to review this audit, the Tax Commission held that the amounts claimed as a return of capital or as a capital gain " represented a distribution of surplus earnings or profits resulting from an unrecorded appreciation of real property ", and confirmed the assessment of a tax at normal rates on the entire distribution.

The main thrust of petitioner's argument on this proceeding to review the commission's determination is that to the extent the distribution resulted from an " unrealized appreciation in the value of the corporation's assets " it was not taxable as a " dividend "; and that the excess over cost of the stock was taxable as a capital gain and the balance of the distribution not taxable at all because it was a return of capital. To find the answer we look at the New York statute.

In the definitions set out in section 350 of the Tax Law a " dividend " is described as any corporate distribution " out of its earnings or profits " (subd. 8); and a " capital gain " means gain or profit " from the sale or exchange of capital assets " (subd. 13). With " capital gains " expressly excluded from its embracing language subdivision 1 of section 359 defines " gross income ", which is the basis for the general income tax on individuals, as any gain in whatever form paid, or whatever kind, from business or commerce growing out of the ownership of property, including " dividends ", and " gains or profits and income derived from any source " including all the enumerated items in the section " without regard to the source thereof ".

If, as the commission ruled, the distribution actually was from " earnings or profits " it would come literally within the definition of a " dividend " (Tax Law, § 350, subd. 8). But in view of the additional finding of the commission that the distribution " did not constitute a return of capital " to the petitioner, it may be part of gross income within the general definitive spread of the statute as a gain or profit to the petitioner even though it is not within the range of the term

"dividend" as the statute defines it or as it is commonly understood.

We hold, first of all, that the distribution is not in any part to be treated as a "capital gain". There was no sale or exchange of property by the taxpayer involved in the distribution to authorize such a treatment.

How awkward it is to fit the distribution received from the corporation by petitioner into the concept of a "capital gain", may be seen in the need of petitioner to treat the receipt of the distribution from the corporation to him in the tax return as a "sale". He had not sold or exchanged his stock or his property in the stock to the corporation or to anyone. He, and not the corporation, owned the stock after the distribution and there had not been the slightest change in its ownership or title.

The main problem, however, is whether the great part of the distribution ($346,117.85) is taxable at all. On this the pleading in the proceeding before us alleges that it was a "return of capital" and the argument here is that it was a distribution of an "unrealized appreciation" of the value of the corporation's assets and hence not taxable to the stockholder.

The stockholder is not in full legal identity with the corporation. Taxable income to an individual takes in many more income origins than "dividends". A gain or income to the holder of stock may exist through a distribution from the corporation even though the corporation may not itself have drawn them from earnings or profits. The corporation may not be taxed when it realizes cash from a loan in part resting on an increment in the value of its assets, but a distribution to its stockholders is not necessarily a "return" of the stockholder's capital. Actually the increment which came to the corporation is nothing the stockholder ever had or put in to be "returned" to him.

This petitioner invested money to buy stock. He still has the stock; but has, by control of the corporation, siphoned off cash which the increased value of the assets has made possible and which is the equivalent of that increased value. This may be looked at in many ways; but one reasonable way to look at it is that it has been a "profit" and "income" to the owner of the stock within subdivision 1 of section 359, rather than a "return" of his "capital".

Here it could be found factually, and has been found by the commission on a reasonable view of the record, that the distribution was not a return of capital. The capital relationship of

the corporation to its stock owners was not changed or altered in any legal sense. The stock was not recalled; its legal status was unaffected.

The corporation advanced the time when it could realize in cash an appreciation in value of its assets and did so by using the increased collateral value of the assets to obtain money by loan. It is true the loan has to be repaid, but the stockholder has realized a profitable distribution and at the same time kept possession of his stock unchanged.

After a hearing the commission not only found, as we have noted, that the distribution "did not constitute a return of capital" to its stockholders, but that the "distribution did not reduce the liability of the corporation on its common stock"; did not "impair the corporation's capital"; and that the refinancing of the mortgage served "no corporate business purpose other than the acquisition of additional cash" to allow the distribution to the stockholders.

The petitioner argues that it is "fundamental" that the income tax law subjects to tax only those earnings, profits or gains "which have been realized". But a gain may be "realized" by a variety of means and instrumentalities. In effect the corporation here has accelerated the payment to its stockholders of anticipated future earnings. To the extent the future earnings will amortize the loan, they will become an instrument of replacing a "return of capital", which the stockholder has already received without paying a tax.

Had the loan not been made, the income which will be used to repay it would certainly be payable as dividends. It is not quite a complete answer to this to say that hereafter if the stock is sold or there is a true distribution of capital, there will be a capital gain computed on a base cost of zero and that the stock must in the future be regarded as having cost nothing.

The argument of petitioner, as elaborated in his brief, proceeds on a need for treating not only generally, but invariably, "any" distribution "not composed of" earnings and profits, first as a return of capital and then, when the "capital" is all back in hand, as a "capital gain".

This argument seems to us to be based on a presumption that it is safe to regard a distribution not based on a usual and routine concept of "earnings and profits" as generally falling into the category of a "return of capital"; and the regulations of the Tax Commission itself give weight to the usual course of practice and to the presumption. (Cf. Regulations of the Tax Comm., art. 66, as to what is to be a return of capital "In general".)

But there are cases, it seems to us, in which this presumption ought not to have uncritical indulgence; and one of them is where no corporate purpose is to be observed for getting together cash and distributing it to stockholders through a form of realization of the increment of value of corporate assets without selling them.

The presumption which could apply in the usual run of corporate business to "anything other than" conventional earnings or profits as being property coming back to the stockholder is here an artificial concept. It is not in accord with the facts; no "return of capital" could here be said to have existed in a realistic view of the corporation's proceedings and the actual distribution to the stockholders; and what is most important from the viewpoint of judicial review, the factual evaluation of the course of proceedings by the commission may not be treated as unreasonable, nor unfounded on a sufficient factual record; nor inconsistent with statute.

Petitioner attacks the commission's finding that the creation of the surplus cash by the larger amount stated in the new mortgage "served no corporate business purpose other than" to enable the corporation to distribute money to its stockholders. He does not suggest what such a purpose could possibly be. In effect his argument on this point is that the corporation wanted to get "absolution" from the restrictions prescribed by the regulations of the prior mortgage (F.H.A.).

But, of course, the amount did not have to be increased to get this "absolution"; and even if the "nefarious significance" which petitioner's brief attributes to the commission's arguments in this court is lacking, and the entire course of proceedings be quite proper and regular, the actual need for the additional money for corporate purposes is not demonstrated; and this seems to us to take the case out of the area in which it is safe to say that all else but "earnings" in the every-day market sense are necessarily to be presumed to fall into the category of a "return" of capital.

The petitioner makes an arguable case for a determination the other way; we do not hold his theory to have no logical basis; but to annul the determination of the commission in a debatable area of tax law interpretation requires more than just an arguable case.

The determination should be confirmed, with $50 costs.

GIBSON and REYNOLDS, JJ., concur with BERGAN, J. P.; HERLIHY, J., dissents and votes to annul the determination.

Determination confirmed, with $50 costs to respondent.